UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61379-CIV-O'SULLIVAN

[CONSENT]

PETER ANTHONY MISTRETTA,

       Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

       Defendant.

_____ /

## ORDER

THIS MATTER is before this Court on the Motion for Summary Judgment filed by the

plaintiff (DE# 17, 12/18/12)[1] and the Defendant's Motion for Summary Judgment with

Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment

(DE# 19, 1/17/13)[2] pursuant to the consent of the parties (DE# 14, 10/31/12) (DE# 15,

11/5/12) and an Order of Reference entered by the Honorable Kathleen M. Williams, United

States District Judge (DE# 16, 11/6/12).

---

[1] In the instant case, the plaintiff is proceeding without the assistance of an attorney. The Court will construe his pleadings liberally and hold them to a less stringent standard than pleadings drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nonetheless, pro se litigants must follow the procedural rules, and the Court is not required to rewrite deficient pleadings. GJR Invs., v. Cnty of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

[2] This document was filed twice. See Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE# 18, 1/17/13).

## I. <u>FACTS</u>

On March 1, 2004, the plaintiff, Peter A. Mistretta, began receiving disability insurance benefits from the Social Security Administration (SSA). Decision (DE# 10-1 at 13, 10/1/12).[3] In July 2006, the plaintiff returned to work on a full-time basis and notified the SSA within two weeks of his employment. <u>Id.</u> at 15; Transcript (DE# 10-1 at 70, 10/1/12). The plaintiff continued to receive disability benefits while he was employed. After a year of working, the plaintiff made several attempts to contact the SSA over the telephone and left a voicemail. Transcript (DE# 10-1 at 77, 10/1/12). His telephone call was not returned. <u>Id.</u>

On April 10, 2008, the SSA notified the plaintiff that he was overpaid $14,314.00 in Title II benefits between April 1, 2007 and March 1, 2008 as a result of his continued substantially gainful employment. Decision (DE# 10-1 at 13, 10/1/12). On February 4, 2009, the plaintiff submitted a request for reconsideration of his overpayment. <u>See</u> Request for Reconsideration (DE# 10-1 at 34, 10/1/12). On February 10, 2009, the plaintiff applied for a waiver with the SSA stating that he was not at fault for the overpayment. <u>See</u> Request for Waiver of Overpayment (DE# 10-1 at 35-42, 10/1/12).

On September 1, 2009, the SSA denied the plaintiff's request for a waiver following a personal conference with the plaintiff which took place on August 28, 2009. <u>See</u> September 1, 2009 Letter (DE# 10-1 at 47, 10/1/12). The plaintiff made a request for reconsideration on September 5, 2009. Decision (DE# 10-1 at 13, 10/1/12). That request  was denied on September 18, 2009. <u>See</u> September 18, 2009 Letter (DE# 10-1 at 49, 10/1/12). On November 11, 2009, the plaintiff filed a request for a hearing before an administrative law judge (ALJ). <u>See</u> Request for Hearing By ALJ (DE# 10-1 at 50, 10/1/12). That hearing took

---

[3] In this order, the undersigned will cite to the page numbers on the top right corner automatically assigned by the Court's CM/ECF system.

place on September 21, 2010. See Transcript (DE# 10-1 at 66, 10/1/12). At the hearing, the

ALJ informed the plaintiff of his right to have an attorney present. Id. at 68-69. The plaintiff

chose to testify without the assistance of counsel. Id.

At the hearing, the plaintiff testified that he notified the SSA two weeks after he

returned to work and then a second time to correct an error. Transcript (DE# 10-1 at 70,

10/1/12). The plaintiff assumed his disability benefits would not end immediately and that

there was some sort of trial period. Id. at 70, 72-73. He also assumed the trial period existed

to wait and see if his employer was satisfied with his performance at work. Id. at 73. The

plaintiff further testified that he assumed the SSA knew he was getting unfavorable reviews

at work. Id. at 75-76. The plaintiff believed he continued to receive SSA benefits because

the SSA knew he might get terminated from his employment. Id. The plaintiff testified that

he did not receive notice of the nine-month trial period upon obtaining his initial benefits. Id.

at 71-72.

On September 23, 2010, the ALJ issued a decision finding the plaintiff liable to the

SSA for the overpayment and denied the plaintiff's request for a waiver. Decision (DE# 10-1

at 15-16, 10/1/12). In her decision, the ALJ determined that: (1) the plaintiff was overpaid

$14,314.00; (2) the plaintiff was not without fault for causing the overpayment and (3) the

plaintiff was not entitled to a waiver for the overpayment. Id. at 14-15. The ALJ determined

the plaintiff was overpaid because he was not entitled to disability benefits after he

completed nine months of work in March 2007. Id. at 15. The plaintiff continued to receive

disability benefits from April 1, 2007 to March 1, 2008 when his income from work exceeded

the SSA guidelines and was considered substantially gainful activity as defined in 20 CFR §

404.1572. Id.

The ALJ determined the plaintiff was not without fault because the plaintiff assumed

there was a trial period and thought he might be getting overpaid, but gave up on efforts to contact the SSA regarding the overpayment. Decision (DE# 10-1 at 15, 10/1/12). The plaintiff believed the SSA would set up an arrangement for repayment if he was overpaid. Id. In addition, the plaintiff never made any attempts to return his monthly checks. Id. The ALJ observed that at the time the plaintiff began receiving disability benefits, he "would have been provided with a pamphlet 'What You Need to Know When You Get Disability Benefits,' which explains the nine[-]month trial work period." Id.[4] The ALJ did not accept the plaintiff's assertion that he was unaware of the nine-month trial period. The ALJ noted that "[the plaintiff's] actions after returning to work suggest[ed] the [plaintiff] had concerns regarding his ongoing eligibility for benefits, but chose not to pursue it." Id. The ALJ further noted that "[the plaintiff's] statements also reflect[ed] he was aware of a trial work period and the eventual cessation of his benefits, in his belief that if an overpayment occurred, he would be able to make some type of arrangement for repayment." Id. The ALJ did not grant the plaintiff's request for a waiver because the plaintiff was not without fault for causing the overpayment. Id. The ALJ also determined the plaintiff had the financial ability to pay back the SSA for the overpayment. Id.

The plaintiff requested a review of the ALJ's decision on November 10, 2010. See Request for Review of Hearing Decision/Order (DE# 10-1 at 9, 10/1/12). On May 8, 2012, the Appeals Council denied the plaintiff's request for review. See Notice of Appeals Council

---

[4] In a letter sent after the hearing, the plaintiff stated that he may have received information concerning the nine-month trial period, but either lost or forgot the information in the seventeen months before he returned to work. See Letter Dated November 5, 2010 (DE# 10-1 at 64, 10/1/12). The plaintiff claimed in the letter that his medication for his heart condition caused memory lapses. Id. According to the plaintiff, there was no mention of the nine-month trial period in the information he received at the SSA's "Ticket to Work and Self Sufficiency Program." Id. at 65.

Action (DE# 10-1 at 5, 10/1/12). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security in this case. Id.

## II. STANDARD OF REVIEW

The Court must determine if it is appropriate to grant either party's motion for summary judgment. On judicial review, decisions of the Commissioner of Social Security are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Substantial evidence is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997). Substantial evidence is relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson, 402 U.S. at 401. Factual evidence is presumed valid, but the legal standard applied is not. See Martin v. Sulllivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

## III. LEGAL ANALYSIS

Section 204(b) of the Social Security Act (the Act) allows for a waiver of an overpayment if a claimant is without fault or if recovery would defeat the purpose of Title II or would be against equity and good conscience. See 42 U.S.C § 404(b) (2006); 20 C.F.R § 404.506; see also 20 C.F.R §§ 404.508 (defining "defeat the purpose of Title II"), 404.509 (defining "against equity and good conscience"). Section 404.507 states in pertinent that:

> In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault (except for deduction overpayments – see § 404.510) on the part of the overpaid individual or on the part of any

other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> **(b) Failure to furnish information which he knew or should have known to be material; or**
>
> **(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect**.

20 C.F.R. § 404.507 (emphasis added). The claimant has the burden of establishing that he is without fault for the overpayment. Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982). If the claimant cannot establish that he is without fault then the Court does not need to consider whether recovery would defeat the purpose of the Title II or be inequitable and create economic hardship. Viehman, 679 F.2d at 227; Garnett v. Sullivan, 905 F.2d 778, 782 (4th Cir. 1990).

In the instant case, the plaintiff's "age and intelligence, and any physical, mental, educational, or linguistic limitations" are not at issue. See 20 C.F.R. § 404.507. In his motion for summary judgment, the plaintiff states: "I have very good comprehension of the English language." Motion for Summary Judgment (DE# 17 at 1, 12/18/12). The parties also do not dispute the amount of the overpayment. Rather, the plaintiff argues that the overpayment should be "waived because the [SSA] neglected to advise [him that he] was no longer qualified for disability benefits and allowed continuation of electronic deposits to [his] checking account even though [he] wasn't qualified to accept it." Id.

The SSA's negligence or fault in continuing to make disability payments to the plaintiff after the nine-month trial period is not at issue. The term "fault" only applies to the individual and not the SSA. 20 C.F.R § 404.507 (defining "fault" in regards to SSA overpayments). "Social Security law does not ask whether SSA is at fault. Rather, in order for the [p]laintiff to avoid having to return erroneously paid benefits, the burden is on him to show that he bears no fault." Martinez v. Astrue, No. 10-80723-CV, 2011 WL 679851, at *4 (S.D. Fla. Feb. 1, 2011). Thus, the plaintiff's argument that the SSA was negligent is irrelevant to determining if he was without fault for the overpayments. See 20 C.F.R § 404.507.

The plaintiff also argues that the ALJ should have considered two letters from the SSA. Motion for Summary Judgment (DE# 17 at 1, 12/18/12). These letters are attached to the plaintiff's summary judgment motion. See Letter Dated August 4, 2006 (DE# 17 at 3, 12/18/12); Undated Letter (DE# 17 at 4, 12/18/12). The August 4, 2006 letter states in pertinent part: "Thank you for contacting us to report your work or changes in your work. The information shown below has been forwarded to a representative to determine what effect this change will have on your Social Security and/or Supplemental Security Income benefits." See Letter Dated August 4, 2006 (DE# 17 at 3, 12/18/12). This letter incorrectly listed the plaintiff's rate of pay as $115.00 per hour. Id. In a subsequent undated letter, the plaintiff's rate of pay was corrected to $15.00 per hour. See Undated Letter (DE# 17 at 4, 12/18/12). The undated letter also contained the following statement: "Thank you for contacting us to report your work or changes in your work. The information shown below has been forwarded to a representative to determine what effect this change will have on your Social Security and/or Supplemental Security Income benefits." Id.

With respect to these two letters from SSA, the plaintiff states the following:

I considered it as being [sic] official SSA response. The [ALJ] Judge did not give me any credit for reporting I was back to work. The SSA also did not give me any credit for reporting I was back to work. There was nothing written in the acknowledgments content to cause me to have any doubt that the back to work status would be processed. Since it was the only written response I received from SSA I considered it as the current status.

That acknowledgment status was "The information below has been forwarded to a representative to determine what effect this change will have on your Social Security income benefits" . . . . That statement essentially is telling me that an SSA agent was assigned [sic] task of tracking my back to work status. It also implied that I would be advised of any further changes in status for benefits. The acknowledgment did not advise of any further action on my part that would be required. The change in benefit eligibility status was obviously never processed or the agent assigned did not do what is required to terminate benefit payments in a normal manner. Specifically what I mean "in a normal manner" is that there would not have been an overpayment issue.

Motion for Summary Judgment (DE# 17 at 1, 12/18/12) (quoting Letter Dated August 4, 2006 (DE# 17 at 3, 12/18/12); Undated Letter (DE# 17 at 4, 12/18/12)).[5] These letters show that the plaintiff reported his return to work to the SSA. That fact is undisputed and was considered by the ALJ. See Decision (DE# 10-1 at 15, 10/1/12) (noting that "[t]he claimant testified at [the] hearing that when he returned to work in July 2006, he notified social security promptly.").

The plaintiff did not meet his burden of establishing that he was without fault for the overpayment and the ALJ's decision is supported by substantial evidence. As noted above, an individual is not without fault for the "[f]ailure to furnish information which he knew or should have known to be material" or for the "acceptance of a payment which he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507(b)-(c). In the instant case, the ALJ determined that the plaintiff was not without fault for the overpayment because the plaintiff assumed there was a trial work period, but never

---

[5] The plaintiff does not accurately quote the letter from the SSA, but it is substantially the same. The plaintiff's version of the quotation is provided above.

investigated further or made significant efforts to contact the SSA. See Decision (DE# 10-1 at 15, 10/1/12). Although the plaintiff notified the SSA of his employment shortly after he had returned to work and made telephone calls to the SSA a year later, the plaintiff did not make additional efforts to follow up with the SSA. Id. The plaintiff had concerns about the benefits he continued to receive, as evidenced by his subsequent attempts to contact the SSA a year later, but continued accepting his monthly checks and never attempted to returned the money out of concern that he was getting overpaid. See id.[6] Thus, the ALJ's finding that the plaintiff was or should have known that he was not entitled to additional payments is supported by substantial evidence. The plaintiff was not without fault and he failed to meet the first requirement for a waiver under Section 204(b) of the Act. See 42 U.S.C § 404(b) (2006).

The ALJ also found that the plaintiff would not suffer unjust economic hardship by repaying the SSA. See Decision (DE# 10-1 at 15-16, 10/1/12). Under relevant case law, if the plaintiff cannot establish that he is without fault, then the Court does not need to consider whether recovery would defeat the purpose of the Title II or be inequitable and

---

[6] The ALJ did not accept the plaintiff's assertion that he was not aware of the nine-month trial period. See Decision (DE# 10-1 at 15, 10/1/12). The ALJ provided the following explanation for rejecting the plaintiff's assertion:

> His actions after returning to work suggests the claimant had concerns regarding his ongoing eligibility for benefits, but chose not to purse it. Further, his statements also reflect he was aware of a trial work period and the eventual cessation of his benefits, in his belief that if an overpayment occurred, he would be able to make some time of arrangement for his repayment.

Id. The reasoning provided by the ALJ is supported by the plaintiff's testimony at the hearing. See Transcript (DE# 10-1 at 78-79, 10/1/12). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Davis v. Astrue, 346 Fed. App'x 439, 440 (11th Cir. 2009) (per curiam) (citation omitted).

create economic hardship. Viehman, 679 F.2d at 227. Nonetheless, the Court will address these additional requirements for a waiver in this Order. See id. The ALJ determined the plaintiff was capable of repaying the SSA based on the information he provided the SSA. See Decision (DE# 10-1 at 15, 10/1/12). The plaintiff reported having $12,400 in a checking account and $155,000 in an IRA account. See SSA Request For Waiver Of Overpayment Recovery Or Change in Repayment Rate Form: Assets-Things You Have And Own (DE# 10-1 at 38, 10/1/12).[7] Thus, the ALJ's determination that the plaintiff demonstrated the ability to repay the overpayment is supported by the evidence.

The ALJ did not err in finding that the plaintiff was not entitled to a waiver for overpayment by the SSA. The ALJ applied the correct legal standard and her ruling was based on substantial evidence a reasonable person would consider adequate and sufficient to support the decision.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the decision issued by the ALJ is supported by substantial evidence and that the correct legal standard was applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1)     The Motion for Summary Judgment (DE# 17, 12/18/12) filed by the plaintiff is **DENIED**.

---

[7] In her decision, the ALJ does not specifically discuss the details of the plaintiff's finances. The ALJ simply states: "The information provided by the claimant on the request for waiver clearly indicates the claimant has the financial ability to repay the overpayment." Decision (DE# 10-1 at 15, 10/1/12). However, the information from the SSA Request For Waiver Of Overpayment Recovery Or Change in Repayment Rate Form: Assets-Things You Have And Own (DE# 10-1 at 38, 10/1/12) was available to the ALJ at the time she issued the decision.

(2)    The Defendant's Motion for Summary Judgment with Supporting

Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (DE# 19,

1/17/13) is **GRANTED**.

(3)    The decision of the Commissioner is **AFFIRMED**.

DONE AND ORDERED in Chambers this **14th** day of June, 2013

_____
JOHN J.  O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All Counsel of Record

Copies mailed by Chambers to:
Peter Anthony Mistretta
4140 NW 39 Ave.
Lauderdale Lakes, FL 33309